HALL, Judge.
Plaintiffs alleging ownership of river lots 7, 8 and 9 in Township 21 South, Range *587 31 East, west of the Mississippi River in the Parish of Plaquemines, filed suit against defendants alleging that defendants were illegally possessing the property in bad faith. Defendants filed peremptory exceptions of ten and thirty years prescription based on adverse possession of the property. Thereafter defendants filed an answer denying the entirety of plaintiffs’ petition, except the allegation that plaintiffs were not in actual or constructive possession of the property, which allegation was admitted.
Subsequently by supplemental petition plaintiffs alleged damages arising out of defendants’ possession and prayed for a money judgment. The supplemental petition was answered by defendants in the form of a general denial.
By consent and agreement of counsel judgment on the exceptions of prescription was deferred until after trial on the merits.
It was also agreed and understood that plaintiffs had a record title to river lots 7, 8 and 9 but that lots 8 and 9 were now part of the bed of the navigable water known as the “Jump” and that the only issue to be tried was whether defendants were in possession of lot 7. Defendants took the position that they were in possession of lot 6 only and that lot 7 due to erosion was now also in the bed of the Jump.
It was also stipulated that the issue of damages raised in plaintiffs’ supplemental petition would not be decided but was to be left open pending a decision as to the actual location of lot 7.
The sole question presented to the Trial Court and the sole question decided by that Court was whether defendants are in possession of lot 7. The Trial Judge found as a fact that “river lot #7 is now part of a navigable stream, the Jump, at Venice, Louisiana” and rendered judgment dismissing plaintiffs’ suit at their cost. Plaintiffs appealed.
The sole issue before us at this time is the location of river lot 7. Plaintiffs rely on the testimony of their expert surveyor, Mr. Carlos J. Christina, who located lot 7 partially on land being occupied by defendants. Defendants rely on the testimony of their expert surveyor, Mr. Ben S. Garrett, who located lot 7 at least 80 feet from shore out into the intersection of the Mississippi River and Grand Pass, commonly called the Jump.
It is pertinent here to mention the qualifications of the two experts. As shown by the testimony, Mr. Christina graduated from Louisiana State University and shortly thereafter, in January, 1942, began working for the Street Department of the City of New Orleans and has worked full time for the City of New Orleans in the Street Department ever since. At the time he testified he was “Engineer of Street Maintenance” for the City of New Orleans. His work for the City consisted of surveying inside the city limits, streets and so forth. He has also surveyed marshlands within the city limits. He did however have some surveying experience outside of the city, in Mississippi. He has never before surveyed any property in the Parish of Plaquemines.
The qualifications of defendants’ expert, Mr. Ben S. Garrett, are as follows: He began surveying on December 7, 1919 and is a certified surveyor in the States of Louisiana, Texas and Oklahoma. He has been surveying lands in Louisiana since 1931, principally in North Louisiana, and in 1945 began surveying lands in Plaquemines Parish. He served as District Engineer for Magnolia Petroleum Corporation in Plaque-mines Parish for eight years and thereafter has worked independently for Sid Richardson, Humble Oil, Gulf Oil, Texas Company, California Oil Company, H. L. Hunt, John Mecom and others. He testified that he has surveyed practically the entire Parish of Plaquemines and in fact laid out the original Jump Corporation property at the Jump in Venice. His surveys cross the Mississippi River numerous times for Shell Pipe Line Company and Southern Natural Gas Company.
*588 Both experts agreed that Connelly was the senior surveyor of the area in question. Connelly surveyed the area in 1836. Each attempted to find Connelly on the ground, but Connelly’s field notes showed that he used willow trees for monuments and these trees have long since disappeared and there are no monuments established by Connelly which are still in existence. The whole effort of the two surveyors was to find Connelly on the ground.
In surveying the property Mr. Christina took as a starting point some “monument” referred to in a 1929 survey by the Board of State Engineers covering Township 20, South- Range 30 East and Township 21, South-' Range 30 East. This survey does not indicate the name of the surveyor, only that it was approved by Mr. McCarroll, Assistant State Engineer. Mr. Christina does not know who placed the concrete monument that he found nor does he know when it was put there. However he says that this monument does not mark the southeast corner of Township 20, South-Range 30 East and the northeast corner of Township 21, South- Range 30 East but is a certain number of feet away from such corner. As a matter of fact the survey he referred to shows this corner to be in the Mississippi River. However by comparison of the distances shown on the State Engineer’s survey with the distance shown on a survey of Township 20, South- Range 30 East made by the Surveyor General’s office in 1873 he concludes that the southeast corner of Township 20, South- Range 30 East is correctly fixed on the State Engineer’s map and concludes that this point is the northwest corner of Township 21 South-Range 31 East as fixed by Connelly. From this assumption he plotted Connelly’s field notes and came to the conclusion that river lot 7 of Township 21, South- Range 31 East was dry land.
Mr. Garrett testified that a later government surveyor named Sulakowski found Connelly on the ground and placed him at certain points. He therefore used both Connelly and Sulakowski. Sulakowski’s survey fixes Fort Jackson, Fort St. Philip and Scott’s House. Using these points which are still in existence Mr. Garrett testified he found Connelly by triangulation.
Mr. Eugene I. Estopinal, formerly Parish Engineer for the Parishes of Plaquemines and St. Bernard was called by plaintiffs as a rebuttal witness.
Mr. Estopinal testified in effect that since Connelly left no identifiable monuments he could never be precisely found and that he himself would have used the next surveyor (viz. Sulakowski) who did leave identifiable monuments. He further testified that portions of Mr. Garrett’s method were acceptable for accuracy and portions were not. He said nothing concerning Mr. Christina’s resurvey but apparently considered that Fort Jackson should have been used as a starting point, which Mr. Christina did not do. As previously noted Mr. Christina started with a survey of the State Board of Engineers made in 1939 which has no dignity whatever.
Mr. Garrett testified that today lot 7 is entirely out in the river with its nearest point at least 80 feet from shore. He arrives at this conclusion by comparison of the coordinates of stations fixed along the river by U. S. Army Engineers in 1912 as compared to those currently fixed and testified that the comparison shows that the river bank moved westward 267 feet between 1912 and 1957.
The record reveals that the Trial Judge paid close attention to the complex testimony of the two expert witnesses and judging from the technical questions he put to them he was apparently quite knowledgable of the principles of surveying.
In his written “Reasons for Judgment” the Trial Judge said that Mr. Garrett’s “computations and explanation were very exacting and left no doubt in the Court’s mind that his survey was correct.”
The Trial Court concluded that “river lot #7 is now part of a navigable stream, the Jump, at Venice, Louisiana.”
*589 From our study of the record we are unable to point out any error in the conclusion reached by the Trial Judge and the judgment appealed from is therefore affirmed; costs of this appeal to be borne by plaintiff s-appellants.
Affirmed.